When you're ready.  The question presented in this homicide case is whether the district court erred in letting the prosecution elicit testimony that Miranda Reed didn't display remorse during time that she spent in pretrial custody, allowing this testimony was error because the fact that a defendant doesn't feel guilt and shame over another's death has no legitimate tendency to show that she murdered. So remorse, the presence of remorse suggests a consciousness of guilt and therefore guilt. But an absence of remorse, if anything, suggests a clear conscience and not guilt, innocence. So Ms. Reed not having remorse doesn't legitimately suggest that she was guilty rather than not guilty of Brian Chaney's murder. The government's position seems to be that people who are not in fact guilty tend to feel guilty and that people who are guilty tend to not feel guilty, which just does not make sense. But actually, the government really wants to have it both ways because the government routinely argues in this court and in other courts that a defendant's apology shows a consciousness of guilt and therefore guilt. And it just defies logic to say that both expressing remorse and not expressing remorse both tend to establish guilt. Well, it's not guilt in the abstract general point of view. Is there not an element of the offense here that the homicide be with callous and want and disregard for life? I don't think so. Yeah, I think that there is – so there's a timing problem. This was evidence that addressed Ms. Reed's mental state more than a month after the fact. That's a different issue. That's not what you were arguing. I'm not saying that's a lousy issue. It's a different issue. You agree it's a different issue. Don't you think remorse is relevant when an element of the offense is callous and want and disregard? I don't think it is, and the reason is this, is that this malice exists along a spectrum of negligence, extreme recklessness. Malice is what this callous and wanton disregard is a fancy way of saying extreme recklessness. And so I think if you act – Disregard for life means you don't care if someone dies. But so the problem is that you can tell a story of someone who has a reckless disregard for his life and doesn't feel remorse, but the problem is it's equally consistent that if someone acts in self-defense, they're not going to feel bad about what they did because it was justified. Or if someone is provoked and acts upon provocation. What if the jury – why couldn't the jury question be, yes, she intentionally killed him. It was not an act of self-defense, but it wasn't a callous and wanton disregard for life? Why couldn't the jury have found that? What would have been the result if they determined that? If they found that she didn't act with malice? That she intentionally killed him but did not act with a callous and wanton disregard for life. If she intentionally killed him but did not act with callous, it would have been second-degree murder. Okay. And she was convicted of? Second-degree murder. Okay. She was charged with first-degree. Right. The jury found that she – or the jury evidently believed that the prosecution had not proved premeditation beyond a reasonable doubt, which is why she – Why isn't this callous and wanton disregard? So there are two prongs of malice. So you can show malice by showing intent, intent to kill, or extreme recklessness. And so the callous and wanton disregard is flowery language for extreme recklessness. So like the example is like you shoot a gun into the air with a crowd of people. That's callous and wanton disregard. So the problem, the key problem is that – and this is why I'm not sure I agree that it's a separate issue – is that the mental state of extreme recklessness had to exist at the time of the homicide. And like what she felt about it after the fact doesn't bear on that. There's also another problem, I think, with showing that it shows callous and wanton disregard. And that is that remorse is how you feel about your own conduct, the justifiability of your own conduct. So her not expressing remorse five weeks after the fact doesn't say she doesn't care about his life. It says that she didn't think that she acted wrongfully, which is consistent with her feeling that she was justified, which is consistent with self-defense. And so it doesn't help the prosecution prove malice. I think that this issue doesn't come up very much because the government does not often try to prove that a lack of consciousness of guilt proves guilt. But the best analysis I have seen of this is the New Jersey Supreme Court decision that I cited in my brief called State v. Pindale. And they analyze it exactly as I've done. I think the courts have gone the other way. I did not see it either. Oh, in various habeas cases. I think we have one where we gave the evidence of lack of remorse as supporting the decision. I'm not aware of the government citing any sort of case like that, nor have I seen it. Well, Winfield v. Massey, 122, Federal Court of Third, 1329, that's the 1997 decision. The court determined there was sufficient evidence the jury could have found intent explaining that. In conjunction with the other evidence, a jury could infer from the defendant's lack of remorse that the killing of the victim was consistent with her intent and desire. Yeah, I would have to look at that case. I'm not familiar with that. I mean, that's not an outlier. Fourth Circuit, Nineteenth Circuit, we find cases like that. They come up in 2254 cases, I think. I would be happy to address that. However, my suspicion would be that in that case, the relevancy issue is going to be a matter of state law. And so I'm not here arguing. But we said in upholding the state conviction, part of the rationale, part of the reason of this court was there was evidence of intent, and part of it was this. So the fact that the state let it in doesn't mean we have to agree that it's probative. I think I would have to look at the case because I'm not sure that that's been briefed. But I would say that I don't understand how – so it's not that people tend to lack remorse when they did something on purpose. It's that they tend to lack remorse when they feel what they did was justified. And so I think we could say that Ms. Ream not expressing remorse means that she felt that the conduct that resulted in Mr. Cheney's death was justified. But that doesn't help the government because feeling that your actions were justified is equally consistent with self-defense, provocation, all of the other mental states at the time of the homicide. Could you address the harmlessness prong? I think we've got a couple of issues. And one is that you didn't object to evidence that was even stronger along the same lines of a lack of remorse the very same evening in front of this very same witness. You didn't object, that came in, the jury heard it. But that certainly would be – if you want to talk about remorse, I mean if they wanted to consider remorse and they were allowed to, certainly that would have been stronger evidence than this. So it occurred a month later which was, as you said, very opaque and not real clear what happened. So with respect, the testimony about the night of was considerably weaker than this testimony. And the reason is because there was testimony from all of the witnesses, all of the prosecution's witnesses, that she was in shock on the day of. She was described by the prosecution's witnesses as, let's see, as hysterical, as crying, distraught. She was described as callous. They were trying to resuscitate him. She immediately leaves the house. She just gets out of there. Again, I think that the testimony was that she was in shock at the time, that she was in shock at the time and that she was very emotional. And the government's own brief says that the jury easily could have seen what this one witness took as a lack of remorse as her being in shock. And what about the fact that, as you say, this test, from what I could see, I couldn't even see what, I couldn't even understand, frankly, what really happened as far as any showing or lack of remorse. And there was no conversation apparently that occurred between the two. In light of that opaqueness that you point out, how important could this have been to the jury? So what I think is that juries are very attuned to evidence that they think tells them what type of person am I dealing with, what is the type of person I'm dealing with. And this witness says, I'm her friend. I spent a week with her in jail interacting with her all the time. She never expressed any remorse. But she didn't testify that they interacted about the murder. I mean, it was just, and she also testified kind of inconsistently that she really didn't interact with her. I mean, I think that there's... She saw her in the hallway, this sort of thing. There's nothing to say they even talked about this murder. I think there is a... Not a conversation. There's a really good reason that the prosecution really wanted this testimony and that the defense really didn't want it. And that's because the jury could easily think that a good person would feel remorse regardless of the circumstances under which they caused someone's death. And that if you don't express any remorse during a week-long period to a friend who you see all of the time, that that suggests that you're a bad person. And those sorts of clues about what sort of person is on trial are very powerful and shapes how the jury sees the remainder of the evidence. There's also, you know, this is a case where, you know, if it's not the most consequential error that you have ever seen, it could nevertheless tip the balance because of how close this case was. This was an incredibly close case because there was substantial evidence that supported Ms. Rhee's claim of self-defense. So we have the fact that the decedent, Mr. Chaney, repeatedly menaced Ms. Rhee with a dangerous incident, an instrument threatening serious injury. We have Mr. Chaney's scary pathological obsession with Ms. Rhee, his history of violence, assaulting Mr. Rhee, assaulting one of her male friends and putting him in the hospital. We have the fact that Mr. Chaney was intoxicated on methamphetamine. And then Ms. Rhee's testimony that he assaulted her and that's why she stabbed him. She said he had the torch, but the torch wasn't found anywhere near this location. No, the torch was found within about eight feet of this location. I thought the torch was found in the bedroom. It was found in the bedroom. It's a very small hallway. So the hallway leading to the bedroom. Okay. It wasn't found in the hallway, but it was found in the bedroom. Three hours later, it wasn't found in the hallway, but the body wasn't found in the hallway either. What about her disposing of the knife herself? So I think both the disposing of the knife and the other evidence of flight, for example, that that evidence is ambiguous because people can both dispose of weapons or flee because they think it looks bad. Not because they are guilty, but because they realize that people will think that they are guilty. So then I also think we have Ms. Rhee's excited utterances where immediately what she says is, I stabbed him because he was going to burn me with the torch. That's what she says immediately afterward and that's what she says all night long. And then finally, there's the fact that the prosecution's theory of the case is just inherently less plausible than Ms. Rhee's. What sense does it make in a house full of people, I killed somebody because they were annoying? That does not make sense. What does make sense is he'd been assaulting her all night long and he attacks her in the hallway and she kills him. And so given how close this case was, the erroneous admission of this evidence could have produced a different verdict. Thank you. Please, the court. My name is Linda Epperle. I represent the United States. Let me begin, if I could, with the argument that this was a really close case. It was not a really close case. I mean, there was an argument that it was self-defense, but the government's proof certainly overcame that by showing statements by the defendant earlier that day that she intended. To stab or hurt the victim. The location and trajectory of the stab wound completely got rid of her argument that somebody just walked into the night. What about the statements, I'm sorry, the statements about intending to hurt the victim, was this before his conduct with the torch where he was threatening her? It was earlier in the day. And then, of course, there were comments that evening because some of the other people indicated that she had gotten really angry, you know, with him continuing to kind of pester her and others who were there that day sitting on the couch. The defendant, as you noted, failed to call 911 after the killing, ran out of the home, attempted to conceal the knife. The biggest thing, though, in my opinion, that gets rid of the whole self-defense possibility here is that she chose to follow this man down that hallway when she had been offered transportation away from the house. And yes, she says she has to go to the restroom. If you think somebody's about to tag you and hurt you with a blowtorch, as they talked about it, or a torch, it seems reasonable that somebody would find another way to satisfy that urge. And I think there's even testimony there was no bathroom in the house. Was there? So it was not close. Do you think there was testimony there was no bathroom? There was some testimony that she was familiar with that house and that there was a restroom that was, I think she could go downstairs. It may have ended up being one in one of the bedrooms. I'm not clear on the outlay of that house, but I think there's another bathroom in that house. There certainly was the great outdoors, you know, if the possibility was being hurt versus this. They went immediately after they left the house to a Walmart, which certainly had restroom facilities. What about where the torch was found? She says he had the torch in the hallway. Where was it found and how far was it from? I cannot tell you a measurement of exactly how far away it was, but my recollection from the transcript is that it was found in another room on the back of a chair, not in the vicinity. It's not like... If this is three hours later. And I grant you, that's why I didn't read that as one of the things that makes it clear, but it was... It doesn't support... It may be either side. It doesn't support her story that he was bothering her with it there in the hallway. What about her excited utterance immediately saying, I stabbed him because I was afraid he was going to burn me with the torch? I mean, we allow excited utterances in as hearsay because we don't have enough time to dissemble the theory. And I'm not arguing that that should have been excluded. I'm simply saying... But that's pretty good evidence. If you're trying to say it was all one-sided... I'm not saying it's all one-sided, but one of the things that the court considers when looking at non-constitutional error and whether or not it's harmless is the context, the timing, the use of that erroneously admitted evidence and how it compares to the other evidence. So that's why I think the jury compared it to the other evidence and despite whatever statement she might have made immediately, found her to be less credible. And the other point that I'd like to make regarding this question about lack of remorse is that this court has held where wrongfully admitted evidence was cumulative of other properly admitted evidence. It's less likely to have injuriously injured the jury's verdict. And here, the first question about remorse was about whether or not she felt remorse immediately. That question came in with no objection and her lack of remorse at that point came in with no objection. There was no objection raised until the question about what she said at the jail. And I believe the government would want to emphasize that this was one question in the middle of this trial over remorse. And I think that there are certainly reasons that we've given in our brief as to why remorse is important. It's reasons that go far beyond remorse equals callous, equals cold-hearted character evidence. Was remorse addressed in the closing arguments by any counsel? Not by the government, Your Honor. The only thing that came close was Mr. Gocher, I believe, asserted that she felt sorry for, not that she felt sorry, she felt sad that he was dead, I think was his comment. And it was just a singular comment. By defense counsel. By defense counsel. The government never mentioned it again other than that single question. So it's very isolated. It's very unlikely that had the jury not heard that, we would have had a different verdict. But there's a good reason for asking about her demeanor a month later. And that is exactly the argument that defense counsel just made. That at the time of the crime, there was testimony that she was, I think the word is freaking out. That she was shaking and shocked. And we were dealing with a defendant who was going to try to say, who could argue. It's not that I don't feel remorse, I'm just so in shock, I can't express how I really feel. And to know that a month and a half, two months later, when the shock had faded, when she had time to comprehend what happened, she clearly felt still lack of remorse. So it took away the defense's ability to explain away that remorse that had been admitted without objection. For all these reasons, unless the court has further questions, that's basically the government's argument in this case. Thank you, Counselor. Thank you, Your Honor. Did Mr. Lee have any remaining time? He's taking seconds, Judge. Okay, that's all he needs. Thank you, Your Honor. There wasn't one question about remorse. There was a whole series of questions leading up to it to build the foundation for remorse. No remorse, the prosecution insisted on it over a defense lawyer's objection. And the fact that defense counsel felt the need to address it in their closing shows that it was prejudicial. Thank you. Thank you. I probably excused both of you before when I shouldn't have. I'm glad you stayed. But now you're excused. The case is submitted. The court will be in recess until 9 tomorrow morning. Thank you.